UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAUL J. G., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-01971-MG-JRS |
| | ) |
| LELAND C. DUDEK Acting Commissioner of Social Security Administration, | ) ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In February 2020, Plaintiff Paul G. applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of October 1, 2018. [Filing No. 15-2 at 16.] After denials at the initial and reconsideration levels, Administrative Law Judge Shelette Veal (the "ALJ") conducted a telephonic hearing on February 4, 2021. [Filing No. 15-2 at 16-42.] The ALJ issued a decision on February 25, 2021, concluding that Paul G. was not entitled to receive benefits. [Filing No. 15-2 at 16-42.] The Appeals Council denied review on May 11, 2021. [Filing No. 16-3 at 12-20 .] On July 7, 2021, Paul G. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The Commissioner moved for remand under sentence six of 42 U.S.C. § 405(g) upon discovery of irregularities in the hearing transcript [Filing No. 16-3 at 14-15], and the case was returned to the agency in September 2021. [Filing No. 16-3 at 6.] The case was remanded to a new ALJ, who held a hearing in July 2022. [Filing No. 16-2 at 36-70.] Plaintiff received another unfavorable decision later that month. [Filing No. 16-2 at 5-28.] Plaintiff did not file written exceptions to the ALJ's decision within 30 days, and the Appeals Council did not decide to review

1

the decision on its own within 60 days. But after the ALJ's decision became the final decision of the Commissioner, the Commissioner filed a motion to reopen the case and the administrative record in May 2024 because this Court retains jurisdiction over the case. [Filing No. 17.] With the Court's grant of the motion, the case has been reinstated for judicial review of the ALJ's decision. [Filing No. 18.]

The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 10.] For the following reasons, the Court **AFFIRMS** the decision of the ALJ denying Paul G. benefits.

# I.
## STANDARD OF REVIEW[1]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by

---

[1] The regulations governing disability determinations for benefits under Title II and Title XVI are identical in virtually all relevant respects unless otherwise noted.

reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform His past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform His own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. §

3

404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Paul G. was 39 years old on the date of his alleged onset of disability. [Filing No. 16-2 at 26.] Paul G.'s application alleges he can no longer work because of problems with chronic headaches, cervical condition, radiculopathy in his arms and right leg, lumbar condition, posttraumatic stress disorder (PTSD), left knee condition, right shoulder condition, foot arch condition, and tinnitus. Paul G. has at least a high school education, [Filing No. 16-2 at 26], and has past work experience as an infantry specialist, communication assistant, infantry unit leader, and commanding officer, [Filing No. 16-2 at 26; Filing No. 15-3 at 10-11.] Following the July 2022 hearing, the ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Paul G. was not disabled. [Filing No. 16-2 at 5-27.] Specifically, the ALJ found as follows:

- At Step One, Paul G. has not engaged in substantial gainful activity[2] since October 1, 2018 (the alleged onset date). [Filing No. 16-2 at 8.]

- At Step Two, Paul G. has the following severe impairments: "cervical degenerative disc disease with radiculopathy/spondylosis, status post cervical disc arthroplasty, followed by cervical fusion, lumbar spondylolisthesis/anterolisthesis, chronic pain syndrome, migraine, hepatic steatosis, obesity, depressive disorder, posttraumatic stress disorder (PTSD), anxiety, delusional disorder, attention deficit hyperactivity disorder (ADHD), cannabis abuse, alcohol use disorder/alcohol abuse, in early remission. [Filing No. 16-2 at 8.]

- At Step Three, Paul G. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). [Filing No. 16-2 at 10.]

- After Step Three but before Step Four, Paul G. had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can occasionally balance, stoop, kneel, and crouch, he can never crawl, he should avoid concentrated exposure to unprotected heights and loud noise (as defined in the DOT), he can occasionally reach overhead with the bilateral upper extremities, and he can frequently look up and down and side to side. In addition, the claimant can understand, remember and carry out simple instructions and tasks, he can make judgments related to simple work-related decisions, he can respond appropriately to occasional interactions with coworkers, supervisors and the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting free from fast paced production requirements (such as assembly line type work activity) and with few, if any, changes in terms of work setting, tools and processes. [Filing No. 16-2 at 12.]

- At Step Four, the ALJ found Paul G. is unable to perform any past relevant work. [Filing No. 16-2 at 26].

- At Step Five, relying on the vocational expert's testimony, the ALJ found that considering Paul G.'s age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, such as assembler of plastic products, sorter, and packer. [Filing No. 16-2 at 27.]

**III.**

---

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

5

# III.
## DISCUSSION

Paul G. argues that the ALJ failed to account for reasonable limitations associated with migraines, and that the hypothetical question posed to the vocational expert ("VE") was fundamentally flawed. Paul G. also argues that the ALJ failed to properly assess his subjective symptom evaluation.

### A. Limitations Associated with Migraines and the Question Posed to the VE

Plaintiff contends the RFC was insufficient because it did not contain any light sensitivity, time off-task, or absenteeism limitations associated with his migraine headaches. [Filing No. 23 at 14-24.] Plaintiff argues that the RFC should have accounted for the VE's testimony, which included a hypothetical about time off task and absenteeism. However, the ALJ sufficiently accounted for Paul G.'s migraines.

The RFC represents "the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). *See* 20 C.F.R. § 404.1545(a)(1). "The RFC assessment must ... identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p, Fed. Reg. 34474-01 (July 2, 1996). The Court's "role is to determine whether the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Saul*, 955 F.3d 583, 595-96 (7th Cir. 2020). "The ALJ is not required to address every piece of evidence or testimony presented but must provide a 'logical bridge' between the evidence and the conclusions so that [the Court] can assess the validity of the agency's ultimate findings." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

Here, the ALJ found Plaintiff had the RFC to:

[P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can occasionally climb ramps and stairs, he can never climb ladders, ropes, or scaffolds, he can occasionally balance, stoop, kneel, and crouch, he can never crawl, he should avoid concentrated exposure to unprotected heights and loud noise (as defined in the DOT), he can occasionally reach overhead with the bilateral upper extremities, and he can frequently look up and down and side to side. In addition, the claimant can understand, remember and carry out simple instructions and tasks, he can make judgments related to simple work-related decisions, he can respond appropriately to occasional interactions with coworkers, supervisors and the general public, he can respond appropriately to usual work situations, and he can deal with routine changes in a routine work setting free from fast paced production requirements (such as assembly line type work activity) and with few, if any, changes in terms of work setting, tools and processes.

[Filing No. 16-2 at 12.]

The ALJ carefully discussed the relevant record and considered migraine related evidence, however the records contained minimal discussion and analysis of Paul G.'s headaches and how they impacted his life. [Filing No. 16-2 at 11, 19.] Ultimately, the RFC partially accounted for Plaintiff's migraines by limiting stressful exposure (finding him only capable of "occasional interactions with coworkers, supervisors and the general public."). The ALJ also limited his exposure to loud noise. However, the ALJ did not adopt into the RFC the VE's testimony about an off-task or absentee individual.

The ALJ asked the VE to assume a hypothetical individual who:

can perform the full range of light exertional work activity except they can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; and never crawl; they should avoid concentrated exposure to unprotected heights and loud noise; occasionally reach overhead with the bilateral upper extremities; frequently look up and down and side to side; they can understand, remember and carry out simple instructions and tasks; make judgments related to simple work-related decisions; respond appropriately to occasional interactions with coworkers, supervisors, and the general public; respond appropriately to usual work situations; and he can deal with routine changes in a routine work setting free from fast paced production requirements such

7

as assembly line type work activity with few, if any changes in terms of work setting, tools, and processes.

[Filing No. 20 at 9-10.] The VE testified this individual could not perform any past work but could work as an assembler of plastic parts, sorter, or inspector packer. The next hypothetical asked the VE to account for one day of absenteeism per work week—the VE said this would be work preclusive. [Filing No. 16-2 at 67.] Paul G.'s attorney asked the VE to account for the first hypothetical but add that the individual would need a cane for standing and walking—the VE said this would preclude working as an assembler of plastic parts, sorter, or inspector packer. And, the VE said all work would be precluded if the individual were to be off task for at least 20 percent of the average workday. [Filing No. 16-2 at 68.]

Paul G. argues that because the ALJ posed hypotheticals to the vocational expert that accounted for time off task or absenteeism, the ALJ should have discussed these potential limitations in her analysis. But the governing law says otherwise. *Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020) (no error in failing to discuss "a hypothetical with a more restrictive limitation…than what was supported by the medical record"). But because there was no record evidence that would have reasonably supported absenteeism or time off task limitations based on Paul G.'s headaches, therefore the ALJ did not need to "impose such a limitation in the RFC, much less explain her decision not to." *Reynolds v. Kijakazi*, 25 F.4th 470, 473-74 (7th Cir. 2022).

In the RFC analysis, the ALJ acknowledged Paul G. "testified to experiencing headaches since 2016 that occur at least once a week. He reported he must go to bed and stay in a dark room when having a headache. The claimant testified that stress makes his headaches worse." [Filing No. 16-2 at 15.] Additional migraine-related medical evidence is minimal—and there is no medical evidence specifically supporting time of task or absenteeism. The most recent evidence prior to the onset date notes Paul G. struggled with migraines, but that his migraines were treatable with

medication. [Filing No. 15-7 at 329.] The ALJ noted "Treatment records also demonstrate treatment for headache and migraines, with Fioricet for abortive treatment of migraines and an elevated body weight (Exhibit 6F/168, 284-286, 344-347, 371-378)." [Filing No. 16-2 at 19.] Overall, the ALJ found Paul G.'s "testimony is not entirely consistent with the evidence of record in terms of his alleged physical symptoms and functional deficits." [Filing No. 16-2 at 16.] The ALJ also considered May 2019 orthopedic visit notes but stated these treatment notes indicated "claimant's symptomology seemed to be vague in terms of the occurrence rates and the intensity, with claimant reporting some symptomatology in his left arm . . . as well as headaches and sleep problems." [Filing No. 16-2 at 18.] In this instance, even Plaintiff's self-reporting of his headaches to a medical provider was considered somewhat vague. It is not possible to glean any specificity that would support an RFC limitation for time off task or absenteeism.

The ALJ sufficiently analyzed the relevant record and considered the migraine related evidence—but there was not much of it. [Filing No. 16-2 at 11, 19.] The ALJ did not ignore migraine limitations, instead finding the RFC's "limitation to avoid concentrated exposure to unprotected heights and loud noise . . . addresses the claimant's migraines." [Filing No. 16-2 at 25.] The ALJ did not adopt into the RFC the VE's testimony about an off-task or absentee individual, but Paul G. does not point to any piece of medical evidence that supports limitations for time off task or absenteeism beyond his own descriptions of his symptoms and the fact that providers throughout the years have noted he experiences headaches and migraines. Similarly, there is no objective medical evidence indicating a limitation for exposure to light. The ALJ built a logical bridge between her analysis of Paul G.'s migraines and the RFC, and her findings are **AFFIRMED**.

### B. ALJ's Subjective Symptom Analysis Under SSR 16-3

Paul G. next argues that the ALJ improperly accounted for his subject symptom analysis. But this argument also fails: the ALJ appropriately considered Paul G.'s subjective symptoms. [Filing No. 23 at 22-24.]

An ALJ's evaluation of subjective symptoms will be upheld unless it is "patently wrong." *Shidler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's subjective symptom evaluation may be patently wrong where the ALJ fails to "build an accurate and logical bridge between the evidence and the result." *Ribuado v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (internal citation and quotation marks omitted). The ALJ must provide specific reasons supporting his or her evaluation that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

ALJs use a two-step process to evaluate an individual's subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). First, an ALJ must determine whether a claimant has "an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves to step two where the ALJ must consider all the evidence in the record to evaluate the intensity and persistence of an individual's symptoms and determine "the extent to which an individual's symptoms limit her or her ability to perform work-related activities." *Id.* at *4. When assessing a claimant's symptom testimony, the ALJ considers the factors set forth in 20 C.F.R. § 404.1529(c)(3), *i.e.*, (1) a claimant's daily activities, (2) the location, duration, frequency of the pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication, (5) treatment received for relief of pain or other symptoms, (6) measures the claimant uses to relieve pain or other symptoms, and (7) other factors concerning a claimant's functional limitations and

10

restrictions due to pain or other symptoms. *Id.* "[A]n ALJ need not discuss every detail related to every factor…." *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021).

An individual's statements about intensity, persistence, and limiting effects of symptoms may not be disregarded "*solely* because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 2017 WL 5180304, at *5 (emphasis added); *see also Johnson v. Barnhart, 449 F.3d 804, 806 (7th Cir. 2006)* (holding that an ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony"). That is so because "[t]he etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report." *Johnson*, 449 F.3d at 806.

Here, Paul G. argues the ALJ dismissed his subjective symptoms because the objective record did not support them—and that this dismissal was improper without further analysis. [Filing No. 23 at 22-24]. However, "[s]ubjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence*." Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (citations omitted). The ALJ found "[w]hile treatment records confirm the claimant's treatment of pain secondary to cervical and lumbar spine impairments, migraines, and hepatic steatosis, clinical reports document no considerable functional deficits beyond those" in the RFC. [Filing No. 16-2 at p. 16.] In terms of Plaintiff's back pain, the ALJ noted discharge paperwork from January 2019 showing an overall improvement of 70 percent. [Filing No. 16-2 at 17.] The ALJ also noted a July 2020 consultative physical examination demonstrating "limited range of motion of the lumbar spine, but otherwise

11

full range of motion of the spine and bilateral upper and lower extremities." [Filing No. 16-2 at 20.] These records are inconsistent with the severity of Plaintiff's reported subjective symptoms.

And the ALJ appropriately considered Paul G.'s daily activities. Ultimately, reviewing courts take a deferential approach to the ALJ's credibility determinations, and the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability" to withstand review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). The ALJ's reasoning does not need to be "flawless," *Similia v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009), and will be sustained on review despite isolated errors, *see Halsell v. Astrue*, 357 F. App'x 717, 722-23 (7th Cir. 2009) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are."); *Walcott v. Berryhill*, 2019 WL 2494165, at *8 (S.D. Ind. Feb. 5, 2019) ("Even if this court were to hold that the ALJ should have expressly addressed Plaintiff's activities, any error was harmless because the ALJ provided other reasons for discounting Plaintiff's subjective complaints."). The Seventh Circuit has held that "[w]hen no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)).

The Court agrees with the Commissioner that the ALJ "grappled with the testimony Plaintiff contends [s]he (sic) ignored." [Filing No. 22 at 11.] The ALJ provided accurate chronologies of Plaintiff's conditions and described how they improved or declined over time; she did not cherry-pick treatment notes showing improvement or ignore whole lines of evidence about limiting symptoms. Although Plaintiff hired a housekeeper to help with the cleaning due to pain and had issues with reliably attending work due to days where he would struggle,[3] the ALJ

---

[3] The ALJ also noted: [a]s for a typical day, the claimant testified that he rises between 7:00 or 8:00 a.m., feeds and lets his dog out, and takes care of him, grocery shops using online ordering, due to the pain caused by walking around the store. He stated that he sometimes cooks for himself,

appropriately weighed these considerations against ample record evidence, including many normal examination findings, orthopedic treatment records indicating he was not limited in functioning, and updated treatment records from 2021 showing that although he experienced frustration due to pain, he was overall displaying good insight and judgment and stable findings, and that medication had been responsive when taken appropriately. [Filing No. 16-2 at 24.] The ALJ detailed Paul G.'s mental health history but found it "limited and sometimes contradictory . . . [m]oreover, the VA has not given the claimant a rating for his mental health conditions." [Filing No. 16-2 at 24.][4] The ALJ noted that physical exams revealed few abnormalities and "imaging of the spine and abdomen does not reflect significant worsening." [Filing No. 16-2 at 24.]

The ALJ's discussion of Plaintiff's non-compliance with medication was also sufficient. An ALJ "may need" to ask about non-compliance and explore reasons for non-compliance, but this burden is low. *Phillip R. v. Kijakazi*, No. 1:21-cv-01068- JRS-MPB, 2022 WL4125896, at *4 (S.D. Ind. June 21, 2022) (citing SSR 16-3p, 2017 WL 5180304, at *9). At the hearing, the ALJ explored Paul G.'s history of healthcare coverage and whether gaps in coverage impacted his ability to maintain treatment. [Filing No. 16-2 at 15.] Paul G. stated he had health insurance through the VA since 2018, although he has had lapses in coverage beginning in 2020. His non-compliant treatment predominately occurred in 2021 and 2022. Therefore, the ALJ's discussion of healthcare

---

but he limits the standing and cooking, due to pain. He stated that he does not need assistance with bathing and dressing. He stated that he occasionally goes to a shooting range with a friend, going twice in the past year. He stated that he would have to lighten the load and avoid the guns that caused recoil, due to pain. [Filing No. 16-2 at 14.] The ALJ does not appear to discredit these statements, only that the overall evidence "does not fully support the degree of functional limitations the claimant asserts."

[4] The Court disagrees with the characterization of Paul G.'s mental health history as limited, but finds the ALJ adequately addressed it, especially given Paul G.'s unclear history of substance abuse. [Filing No. 16-2 at 16-24.]

coverage—though minimal—was sufficient to find a probable reason for non-compliance. And the ALJ took care to note the timeline Plaintiff's medication history.

The ALJ also did not err in her analysis of cane use. Although Plaintiff self-reported cane usage, there were no medical records documenting need for the cane (beyond reports noting that he used a cane, which is not in dispute). And "even abundant evidence of the use of an assistive device like a cane for ambulation—including during the claimant's presentation at treating visits—does not demonstrate that an assistive device is medically required." *Loretta S. v. Kijakazi*, No. 4:21-cv-00008-TWP-DML, 2022 WL 4599217 at *5 (S.D. Ind. Sept. 30, 2022) (citing *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012)).

The ALJ sufficiently documented Paul G.'s subjective symptoms and daily activities against the record evidence, the ALJ concluded "the evidence of record does not fully support the degree of functional limitations the claimant asserts." [Filing No. 16-2 at 24.] She built a logical bridge from the record evidence to her conclusions, and the Court will not re-weigh the evidence. Overall, Plaintiff's argument that the ALJ's RFC did not reconcile with the medical evidence amounts to an improper invitation for the Court to reweigh the evidence. The ALJ's subjective symptom analysis is **AFFIRMED**.

## IV.
### CONCLUSION

For the reasons detailed above, the Court **AFFIRMS** the ALJ's decision denying Paul G. benefits. Final judgment will issue by separate entry.

Date: 3/27/2025

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**